UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────────

MARIA C. VELEZ o/b/o S.V.,

                                   Plaintiff,

                                                        DECISION AND ORDER

              -vs-

                                                        14-CV-6481-CJS
CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                   Defendant.

───────────────────────────────────

**APPEARANCES**

For Plaintiff:                          Catherine M. Callery, Esq.
                                        Empire Justice Center
                                        One West Main Street Suite 200
                                        Rochester, NY 14614
                                        (585) 295-5727


For the Commissioner:                   Elizabeth Rothstein, Esq.
                                        Social Security Administration
                                        Office of General Counsel
                                        26 Federal Plaza Room 3904
                                        New York, NY 10278
                                        (212) 264-2536

                                        Kathryn L. Smith, A.U.S.A.
                                        United States Attorney's Office
                                        100 State Street, Fifth Floor
                                        Rochester, NY 14614
                                        (585) 263-6760


**INTRODUCTION**

**Siragusa, J.** Maria C. Velez ("Plaintiff") brings this action on behalf of her minor

child ("S.V.") pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of

the final decision of the Commissioner of Social Security ("the Commissioner") denying

her application for Supplemental Security Income ("SSI"). The Court has jurisdiction over

this matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Both the Commissioner and Plaintiff have filed motions for judgment on the pleadings. Pl.'s Mot., Mar. 20 2015, ECF No. 9; Comm'r's Mot., May 19, 2015, ECF No. 10. For the reasons stated below, Plaintiff's motion for judgment on the pleadings, ECF No. 9, is granted in part, and the Commissioner's cross-motion for judgment on the pleadings, ECF No. 10, is denied. The case is remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g).

### A. Procedural History

Plaintiff filed an application for SSI on behalf of S.V., a child under the age of 18, on February 9, 2011, with a protective filing date of December 15, 2010. In her complaint, she alleged that S.V. suffers from a disability that began on November 6, 2007. R. 39. The initial application was denied on April 28, 2011, and Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff and S.V. appeared with a paralegal from the Empire Justice Center at a hearing before ALJ Stanley K. Chin on October 16, 2012.

On October 26, 2012, the ALJ issued a written decision finding S.V. not disabled and therefore not eligible for SSI. R. 33–57. The ALJ's determination became the final decision of the Commissioner on June 23, 2014, when the Appeals Council denied Plaintiff's request for review. This action followed.

### FACTUAL BACKGROUND

### A. Testimonial Evidence

The hearing took place in Rochester, New York. Plaintiff testified through an interpreter about S.V.'s anxiety. She stated that when her daughter was born, doctors used forceps and as a result she has an indentation in the back of her head. At the time of the

hearing, S.V. was six years old and in second grade. When the family was living in Puerto Rico, they had to take S.V. out of school because of her anxiety, vomiting, and asthma. In Puerto Rico, Plaintiff could not obtain services needed by her daughter, so she came to the continental United States.

S.V. was placed in the first grade here, and Plaintiff was able to obtain services for her anxiety and vomiting, but unable to advance her to the second grade. Plaintiff decided it would be better to keep her in first grade. Plaintiff further testified that her daughter does not handle change well. "Her nerves act up. She gets a panic attack. I've also noticed that her asthma attacks are also in connection with the changes; with her nervousness, she'll get an asthma attack." R. 19. Plaintiff described S.V.'s panic attacks as follows: "When she gets a panic attack, she starts to scream. Her heart starts to pound really fast." R. 20.

Plaintiff further testified that S.V. gets between five and six panic attacks a day, that she has never gone to the bathroom by herself,[1] that she does not sleep by herself in her room, and that Plaintiff often has to wait until another person is available to supervise S.V. so that Plaintiff can proceed to do whatever she needs to do.

Plaintiff testified that her daughter is on medications and, as a result, has had some improvement; however, the medications make her drowsy. She testified that at school S.V. was receiving one day of speech therapy, and now receives two days, and that S.V. sees the psychologist one day per week. S.V.'s teacher reported that S.V. does not do well in large groups and is not socializing. S.V.'s mother further testified that S.V. did not say her first words until she was three years old, and even when she was five, S.V.'s grandmother would have to ask Plaintiff to translate S.V.'s speech for her. Presently, much of her language can be understood by others, except for more difficult or

---

[1] S.V. urinated in her clothing because she did not want to go to the bathroom at school. R. 27.

lengthier words. Plaintiff testified that S.V. also sees Michelle Sweatman, a psychologist, outside of school twice a week. She further testified that S.V. takes a small bus to school, but must sit at the window or she will have a panic attack. R. 25. At the conclusion of Plaintiff's testimony, the ALJ indicated he did not have any questions for her.

### B. School Records

S.V. attends school in the City School District of Rochester. In November of 2010, the school had a psychosocial assessment made of S.V. R. 321. The assessment, completed by Clara Peechatt, Certified Social Worker, notes that S.V. was born in Ohio, came to Rochester in August of 2010, that her predominate language is Spanish, and that she lives with her parents and a sister. At the time of the assessment, she was in kindergarten. The assessment also notes that S.V. suffered fetal distress during labor, dropping her heartbeat significantly. In Puerto Rico, she attended a Head Start program, but only for six months "because of her behaviors relating to intense anxiety." R. 322. Ms. Peechatt noted as well that:

> According to her mother, on November 1, 2010, [S.V.] was diagnosed with anxiety and depression; she is currently taking Citalopram 1½ ml. There is reported history of depression, anxiety, and panic attacks on both family sides of [S.V.'s] parents. [S.V.'s] father suffers from depression, anxiety, and high blood pressure. Her mother suffers from anxiety. They are receiving family therapy at Rochester General with Ms. Michelle Swanger.

R. 322.

Attached to the psychosocial assessment is a psychological evaluation of S.V. dated December 11, 2010. R. 326. The evaluation was completed by Ana Olivares, a Certified School Psychologist, who wrote about S.V.'s inability to use the bathroom alone, self-induced vomiting in the morning, and avoidance of gym by saying she has to go use the bathroom. In addition, she noted that S.V.'s teacher reported S.V. knows only three

letters, could not write her name, and could not identify numerals. R. 326. She also noted

that S.V. has difficulty holding a pencil, indicating that her fine motor skills may be de-

layed. Dr. Olivares saw S.V. over two sessions and made several observations:

> During the first session she was somewhat withdrawn, but cooperative. Her speech required careful listening. At times the examiner asked her to repeat what she had said which she did without hesitation. She only communi-cated in Spanish. During this first session she rolled her eyes up until only the whites showed. She did this twice. It was similar to petit mal seizure, but there is no history of this in background information. She quickly adjusted her eyes [and] was able to make eye contact with the examiner for the remaining of the session and the second session as well.
>
> During the second session she was more focused and animated. She asked several times when it would be time to go home. When interviewed she said that she rather be at home than in school. She also said that she likes school. When asked about friendships, she said she had one female friend and that all the boys were her friends adding that the girls did not want to be her friend. She spoke at length about her parents stating that her fa-ther was going to marry her mother and herself as well.

R. 327. Dr. Olivares concluded from the test results that S.V.'s intellectual ability fell within

the low average range with a standard score of 81. Her verbal intellectual ability, reflecting

vocabulary and accumulated verbal knowledge, was within the low average range with a

standard score of 85. Her thinking ability fell within the average range, scoring 97, how-

ever, her cognitive efficiency, "which reflects automatic cognitive processing such as

visual scanning and short-term memory for numerical sequences, fell within the low or

borderline range with a standard score of 75." R. 327. Dr. Olivares  observed  that her

low average range scores in verbal comprehension, sound blending, visual matching,

retrieval fluency, and auditory working memory, along with her low or borderline ability to

mentally manipulate and recall short numerical sequences, or to encode information with

visual and auditory input were deficits that "can have a negative impact on her ability to

learn." R. 327.

Dr. Olivares also made comments on S.V.'s achievement, perceptual, social and emotional functioning. R. 328. Her summary and diagnostic impressions indicated to Dr. Olivares that S.V. was "in fact experiencing a difficult transition into the school setting." R. 329.

In a report entitled Speech-Language Assessment, dated December 10, 2010, R. 333, a speech-language pathologist, Ellen L. Schulman, concluded the following:

> [S.V.], age 5-0, exhibits normal hearing, voice and fluency skills. Her artic-ulation skills are developmentally delayed. She exhibits a s/ch substitution and is sometimes difficult to understand out of context. [S.V.'s] receptive language and auditory processing skills are moderately to severely de-layed, while her expressive language skills are moderately delayed. [S.V.] exhibits mild delays in her pragmatic, social language skills, as she has difficulty initiating conversations and maintaining a topic during discourse. Other areas in need of improvement include vocabulary, following direc-tions, syntax & morphology, auditory memory and comprehension and phonological awareness skills. [S.V.] exhibits inconsistent abilities in her knowledge of basic concepts. She understands most concepts of quantity and quality (adjectives), however, she exhibits weakness in her knowledge of colors, space (prepositions) and time. [S.V.'s] delays are affecting her academic performance in the classroom. She needs to receive speech-language services in order to improve overall communication and pre-academic skills.

R. 338–39.

In a report dated March 1, 2011, by the Committee on Special Education of the Rochester City School District ("CSE" or "the committee"), R. 315, it was noted that S.V. had a 504 plan,[2] and that "[t]he CSE considered speech/language services as a speech impaired student. This option was rejected because as [S.V.'s] anxiety has decreased she has begun to make academic gains. [S.V.] will be considered a nondisabled [sic] at this time." R. 315. The report concludes that S.V. "needs new information repeated and simplified" as her only requirement. R. 317.

---

[2]  A reference to section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*

The CSE sent a letter to Plaintiff dated May 5, 2011. R. 248. In that correspond-ence, the committee attached an individualized education plan ("IEP") which concluded that S.V. had a speech or language impairment and classified her as disabled. R. 249. The IEP recommended special transportation, psychological counseling, and speech and language therapy. A similar IEP was put in place for S.V. on September 2, 2011. R. 256.

Teachers Ana I. Vega-Clark and Lourdes Gonzalez, who had been S.V.'s class-room teachers for 63 days, noted in a School Performance Questionnaire completed on December 7, 2011, R. 406–10, that S.V.'s impairments were "extreme" in the following areas: (a) learning new material; (b) reading and/or comprehending written material; (c) comprehension and/or following directions; and (d) receptive language skills. The teachers noted that S.V. processed information very slowly making it hard for them to know exactly what she wanted. R. 407. They also observed that although she did not receive any occupational therapy services, S.V. "has trouble walking and using the stairs." R. 408.

S.V. continued to be classified as a student with a disability and continued to re-ceive special education services for the 2011–12 school year. R. 273. At the Special Education Meeting of April 2, 2012, the committee noted in its report that S.V. was making satisfactory progress toward her IEP goals in the fall, but showed difficulty with learning and retaining the vocabulary skills presented since January 2012. R. 279. She was able to write her first and last names, but needed a great deal of teacher support to complete any other writing activity. The report states that S.V. "received therapy in Spanish this year, which is also the primary language of instruction in her classroom." R. 279. In ad-

dition, it does note that her gross and fine motor skills seemed appropriate "for her level." R. 280. Finally, the report noted S.V.'s need for improvement in all academic areas.

### C. Medical records

A Children's SSI Functional Assessment Form dated April 30, 2012, was prepared by Michelle Swanger, Licensed Psychologist. R. 422–26. In the form, Dr. Swanger noted that S.V. had a marked impairment in intellectual skills; an extreme impairment in communications; a marked impairment in social behavior; and a marked impairment in her ability to complete tasks in a timely manner. R. 424–26. Dr. Swanger also listed details about how the impairments negatively affected S.V. *Id.*

## STANDARDS OF LAW

### A. Child Disability Standard

The statutory standard for children seeking SSI benefits based on disability is

> [a]n individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

Social Security Act sec. 1614, 42 U.S.C. §§ 1382c(a)(3)(C)(1).

In evaluating disability claims in children, the Commissioner is required to use the three-step process promulgated in 20 C.F.R. §§ 416.924. First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe impairment" or combination of impairments. Third, the Commissioner must determine whether the impairment or combination of impairments correspond with one of the conditions presumed to be a disability by the Social Security Commission, that the

impairment(s) met, medically equaled or functionally equaled the severity of an impairment in the listings. 20 C.F.R. § 416.924.

### B. General Legal Principles

Title 42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see also Metro. Stevedore Co. v. Rambo,* 521 U.S. 121, 149, 117 S.Ct. 1953, 138 L.Ed.2d 327 (1997).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Brown v. Apfel,* 174 F.3d 59, 62 (2d Cir.1999) (quoting *Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir.1983) (per curiam)). Section 405(g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are

based upon an erroneous legal standard. *Green–Younger v. Barnhart,* 335 F.3d 99, 105–06 (2d Cir.2003); *see also Mongeur,* 722 F.2d at 1038 (finding a reviewing court does not try a benefits case *de novo* ).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988). A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007).

## ANALYSIS

### A. ALJ's Decision

In applying the three-step process, the ALJ found that S.V. had not engaged in substantial gainful activity during the period under adjudication; S.V.'s asthma, allergies, anxiety disorder with panic attacks, and language disorder were severe impairments, but those impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then determined that S.V. was not disabled under the Act. R. 53.

### B. The Domain of Acquiring and Using Information

Plaintiff first argues that S.V. has a marked to extreme impairment in the domain of acquiring and using information that functionally equals a listing.[3] The Commissioner's

---

[3] Plaintiff does not dispute the ALJ's determination that S.V.'s impairments do not meet a particular listing. Pl.'s Mem. of Law 21, Mar. 20, 2015, ECF No. 9-1.

regulation states that for a school age child, such as S.V., her abilities should be the following:

> (iv) School-age children (age 6 to attainment of age 12). When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; *e.g.*, by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (*e.g.*, reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. § 416.926a(g)(iv). In determining that S.V. did not suffer a marked limitation in this domain, the ALJ focused on the services S.V. was receiving at school:

> She had not been retained any grades. She is not in an extended school year. Intelligence testing revealed low average intelligence. As noted above, since starting her education in the continental United States, although she is still behind grade level, she has been making steady progress. Beyond an additional thirty minute language class, that will be discussed by the third domain, her records are not noteworthy for any increased interventions (Exs. 7E; 8E). The claimant's teachers indicated exclusively extreme limitations relating to this domain (Ex. 12F). Dr. Swanger-Gagne opined a marked limitation in this domain (Ex. 15F). However, such limitations appear overly restrictive in light of the special education services that the claimant receives and her academic gains as noted. The State agency medical consultant opined less than a marked limitation in this domain (Ex. 7F). I find less than a marked limitation in the first domain.

R. 46.

Plaintiff relies on the evaluations of S.V.'s teachers and treating psychologist to support her position that "S.V. has extreme limitations in all areas of acquiring and using information." Pl.'s Mem. of Law 22. She contends that the ALJ did not accord the teachers' evaluations proper weight, citing, *inter alia*, Social Security Ruling ("SSR") 06-3p. Further, she argues that pursuant to 20 C.F.R. § 416.927(c)(2) and SSR 96-2p, the

treating psychologist's opinion ought to have been "accorded controlling weight" as op-

posed to the ALJ's giving it only "some weight." Pl.'s Mem. of Law 22 n.26.

SSR 06-3p states in relevant part as follows:

> For opinions from sources such as teachers, counselors, and social work-
> ers who are not medical sources, and other non-medical professionals, it
> would be appropriate to consider such factors as the nature and extent of
> the relationship between the source and the individual, the source's quali-
> fications, the source's area of specialty or expertise, the degree to which the
> source presents relevant evidence to support his or her opinion, whether
> the opinion is consistent with other evidence, and any other factors that
> tend to support or refute the opinion.
>
> An opinion from a "non-medical source" who has seen the claimant in his or
> her professional capacity may, under certain circumstances, properly be
> determined to outweigh the opinion from a medical source, including a
> treating source. For example, this could occur if the "non-medical source"
> has seen the individual more often and has greater knowledge of the indi-
> vidual's functioning over time and if the "non-medical source's" opinion has
> better supporting evidence and is more consistent with the evidence as a
> whole.

SSR 06-3p. SSR 96-2p states in relevant part as follows:

> Paragraph (d)(2) of 20 CFR 404.1527 and 416.927 requires that the adju-
> dicator will always give good reasons in the notice of the determination or
> decision for the weight given to a treating source's medical opinion(s), *i.e.*,
> an opinion(s) on the nature and severity of an individual's impairment(s).
> Therefore:
>
> When the determination or decision:
>
> - is not fully favorable, *e.g.*, is a denial;…
>
> the notice of the determination or decision must contain specific reasons for
> the weight given to the treating source's medical opinion, supported by the
> evidence in the case record, and must be sufficiently specific to make clear
> to any subsequent reviewers the weight the adjudicator gave to the treating
> source's medical opinion and the reasons for that weight.

SSR 96-2p.

Plaintiff argues, and the Court agrees, that S.V.'s placement in the classroom with

integrated co-teaching, R. 46, is a special education placement under New York law. *See*

8 N.Y.C.R.R. § 200.1(cc) (least restrictive environment); § 200.6(a)(1) ("Students with disabilities shall be provided special education in the least restrictive environment, as defined in section 200.1(cc) of this Part."). Therefore, the ALJ's observation that S.V. was in a regular classroom does not, of itself, indicate the lack of limitations in the domain of acquiring and using information. Plaintiff points out that the ALJ wrote in his decision that "[b]eyond an additional thirty minute language class, that will be discussed by the third domain, her records are not noteworthy for any increased interventions (Exs. 7E; 8E)." R. 46. Plaintiff points out that in addition to the interventions noted by the ALJ, S.V. was also required by her individual education plan to be placed in

> a predictable and structured classroom. She is very shy and may need re-direction going to places. [S.V.'s] work must be modified to her level and she needs to have clear directions of what se [sic] supposed to do. She is needs to be seated close to teachers for academic instruction. She needs to have give [sic] some extra time for her to be able to answer questions. She benefits from small group instruction.

R. 280. (IEP Apr. 2, 2012). Speech and language therapy were increased to four times weekly starting in September 2012. R. 282. The ALJ's reason for not giving controlling weight to Dr. Swanger's medical opinion was: "such limitations appear overly restrictive in light of the special education services that the claimant receives and her academic gains as noted." R. 46. The ALJ did not explain what he meant by the phrase "in light of the special education services" S.V. receives, but presumably meant that since S.V. received language therapy for only 30 minutes per week, R. 46, she must not be markedly limited in the domain of acquiring and using information. The ALJ hearing date was October 16, 2012. However, in the April 2012 IEP, S.V.'s speech and language therapy had been increased to *four* times weekly. Plaintiff testified that S.V. was receiving "two days of speech therapy," and psychologic therapy one day a week at school. R. 23. The ALJ even

13

asked Plaintiff to repeat her testimony, so clearly was informed that S.V. was receiving more than 30 minutes of language therapy per week. R. 24. The ALJ asked the following questions about S.V.'s language comprehension and Plaintiff responded as follows:

Q. And does she bring homework home?

A. Mm-hmm.

Q. And is she able to do it without help?

A. With my help.

Q. And do you observe any—what troubles she has with it? What are her main difficulties with it?

A. Mostly I notice with reading; for example, if she takes a test, she'll hear it one way, but then she'll write it in another.

R. 25. The ALJ's decision does not account for this evidence of S.V.'s apparent inability to "use these skills in academic situations to demonstrate what you have learned" as required by the Commissioner's rules. S.V.'s treating psychologist, Dr. Swanger, saw her one to two times per month for a year prior to filling out the Children's SSI Functional Assessment form. R. 422. She noted that S.V. suffered from a severe receptive language deficit as well as a moderate expressive language deficit. R. 424. She also noted a marked deficiency in S.V.'s ability to complete age-appropriate tasks in a timely manner. R. 426. The ALJ's explanation for the weight given to the treating psychologist's opinion likewise does not meet the requirement of the Commissioner's rules.

In his decision, the ALJ noted S.V.'s progress toward goals, citing Exhibit 8E, an April 16, 2012, report from S.V.'s bilingual special education teacher. R. 266–72. The goals noted in the report are:

1. S.V. will attend to and follow one-step directions.

2. S.V. will retrieve coats, hats, boots, etc. at the end of the school day.

3. S.V. will recognize the letters of the alphabet by reciting and naming each letter.

R. 267–68. By April, she had achieved each goal. Those goals fall far short of the Commissioner's anticipation that a school-age child will "learn to read, write, and do math, and discuss history and science." R. 45. Even the less rigorous requirements the Commissioner sets out for preschool age children were not set as goals in S.V.'s IEP:

Using words to ask questions, give answers, follow directions, describe things, explain what she means, and tell stories allow the child to acquire and share knowledge and experience of the world around her. The child should be able to understand the order of daily routines (*e.g.*, breakfast before lunch), understand and remember her own accomplishments, and begin to understand increasingly complex concepts such as time, as in yesterday, today, and tomorrow.

R. 45.

The state agency consultant, R. Mohanty, whose opinion the ALJ evidently gave significant, if not controlling, weight, signed a report dated April 14, 2011. R. 367. In that report, the consultant wrote the following with regard to the domain of acquiring and using information:

clmt is in Kindergarten, regular ed with difficulty transitioning into a school setting, she gets anxous [sic], while at school and wants to be home. clmt has articulation delays and is uncommunicative in class. Her overall intellectual ability was within low average range. speech/language abilities12/10/10 speech/language assessment: Clmt, age 5-0, exhibits normal hearing, voice and fluency skills. Her articulation skills are developmentally delayed. She exhibits a s/ch substitution and is sometimes difficult to understand out or context[.] [S.V.'s] receptive Language and auditory processing skills are moderately to severely delayed, while her expressive language skills are moderately delayed. [S.V.] exhibits mild delays in her pragmatic social language skills, as she has difficulty initiating conversations and maintaining a topic during discourse. Other areas [i]n need of improvement include vocabulary, following directions, syntax & morphology, auditory memory and comprehension and phonological awareness skills. [S.V.] exhibits inconsistent abilities in her knowledge of basic concepts. She understands most concepts of quantity and quality (adjectives), however, she exhibits weaknesses in her knowledge of colors, space (prepositions) and time. [S.V.'s] delays are affecting her academic perfor-

mance in the classroom.

Pediatric exam done 4/4/11 indicated speech was normal for her age[.]

On Woodcock she scored in overall intellect ss 81,with verbal part ss 85,nonverbal part ss 97,cognitive processing ss 75 borderline range,On PLS4 Spansh she scored ac ss 80,el 76 and tl ss 75,pose, marked, 5811.

R. 368.

The consultative examiner's opinion regarding S.V.'s ability to acquire and use information does not significantly differ from the opinion of Dr. Swanger, only the consultative examiner found S.V.'s limitations to be less than marked. Although Dr. Swanger treated S.V. and saw her frequently, and Dr. Swanger's opinion was supported by S.V.'s teachers, who saw S.V. daily for several hours per day, along with support from Plaintiff's testimony concerning this domain, the ALJ's explanation for not giving controlling weight to Dr. Swanger's opinion does not "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. Furthermore, the ALJ's determination relies on a consultative examination conducted by a consultant who did not have the full record.

The ALJ also referred to S.V.'s IQ scores in support of his determination that she was not markedly impaired in this domain. R. 46 ("Intelligence testing revealed low average intelligence."). IQ scores, however, are not determinative of a claimant's abilities in this domain. SSR 09-3p.

> It is useful to keep in mind that cognition is not identical to intelligence. A child with low intelligence can have an impairment of cognitive function. A child of normal intelligence can also be cognitively impaired if some condition other than a low IQ severely affects the child's ability to progress in the skills involved in reading, writing, and arithmetic.

*Carballo ex rel. Cortes v. Apfel*, 34 F. Supp. 2d 208, 218 (S.D.N.Y. 1999) (citation omitted). By including S.V.'s intelligence testing in the factors supporting his decision to find a

less than marked limitation in this domain, the ALJ misapplied the Commissioner's ruling. Without discussing how he was using S.V.'s IQ scores, the ALJ's decision does not comply with SSR 09-3p ("this domain considers more than just assessments of cognitive ability as measured by intelligence tests, academic achievement instruments, or grades in school.").

Additionally, per the Commissioner's rules, the ALJ was obligated to consider not only how S.V. functioned in a structured setting, but also how she functioned in other settings and whether she "would continue to function at an adequate level without the structured or supportive setting." 20 C.F.R. 416.924a(b)(5)(iv)(C). As the Northern District observed:

> [T]the regulations require consideration of "how [a claimant] function[s] in other settings and whether [claimant] would continue to function at an adequate level without the structured or supportive setting." *Id.* Since "the statute expressly states that because children 'may be more impaired in their overall ability to function in an age-appropriate manner than their symptoms and signs would indicate,' the ALJ *must* 'consider the ability to function independently, appropriately, and effectively in an age-appropriate manner outside of [a] highly structured setting.' " *Marien ex rel. Paez v. Commissioner, SSA,* No. 94cv4577, 1996 U.S. Dist. LEXIS 2570, *25, 1996 WL 97172 (S.D.N.Y. Mar. 5, 1996) (citing 20 C.F.R. § 416.924c(f)) (emphasis in original). A failure to consider the effects of [] such a setting can be grounds for reversal. *See Smith v. Massanari,* No. 00cv402C, 2002 U.S. Dist. LEXIS 26503 at *18–19 (W.D.N.Y. Mar. 16, 2002) (reversing and awarding benefits after finding "that the ALJ erred in failing to fully and properly consider the effects of [child's] structured educational placement on his overall functioning, as required by § 416.924c of the Commissioner's regulations).

*Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *5 (N.D.N.Y. Feb. 18, 2015).

The teachers' evaluations, each of whom observed S.V. in the classroom for 63 days from 9:15 AM until 3:15 PM, R. 409, stated that S.V.'s functioning would not be the same without the accommodations she was receiving, *id*. Their evaluation indicated that

S.V. was extremely impaired in her ability to carry out instructions, maintain an age-appropriate pace, and complete tasks on time. R. 407. They noted that she pro-cessed information very slowly. *Id.* Contrary to the Commissioner's rules, the ALJ's de-cision does not analyze how S.V. would function without a structured or supportive set-ting. Therefore, on remand, the Court directs the Commissioner to properly apply the rules.

### C. The Domain of Attending and Completing Tasks

In this domain, the Commissioner's rule requires the ALJ to consider "how well [S.V. is] to focus and maintain [her] attention, and how well [she] begin[s], carr[ies] through, and finish[es] [her] activities, including the pace at which [she] perform[s] activi-ties and the ease with which [she] change[s] them. 20 C.F.R. § 416.926a(h). Further, the regulation provides details with respect to children of different ages, two of which are relevant here:

> (iii) Preschool children (age 3 to attainment of age 6). As a preschooler, you should be able to pay attention when you are spoken to directly, sustain attention to your play and learning activities, and concentrate on activities like putting puzzles together or completing art projects. You should also be able to focus long enough to do many more things by yourself, such as getting your clothes together and dressing yourself, feeding yourself, or putting away your toys. You should usually be able to wait your turn and to change your activity when a caregiver or teacher says it is time to do something else.
>
> (iv) School-age children (age 6 to attainment of age 12). When you are of school age, you should be able to focus your attention in a variety of situa-tions in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores.

> You should also be able to complete a transition task (*e.g.*, be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h)(2)(i) & (ii).

The ALJ determined that S.V. had a less than marked limitation in this domain. R. 47. He noted S.V.'s achievement goals in study skills, reading, and math, and discounted the teachers' assessment of marked and extreme limitation in this domain, writing:

> Her teachers have opined almost exclusively marked and extreme problems in this domain. They note that the claimant must be supervised at all time for tasks to be completed (Ex. 12F). However, based on the claimant's demonstrated progression with her learning in most subjects, their opinions appear overstated and at best correlate with the claimant's functional abilities without any treatment.

R. 47. Further, the ALJ discounted Dr. Swanger's opinion of S.V.'s marked limitation in this domain, noting that "based on the claimant's scholastic gains with treatment as already discussed, her opinion likewise appears overstated." R. 47.

The ALJ's decision does not discuss the CSE's report, dated April 2, 2012, which noted that "[s]he needs a lot of teacher's support to complete any writing activity," and "[S.V.] needs to write simple sentences independently," R. 279. S.V.'s teachers noted that she needed supervision all the time in order to complete any academic task. R. 407. With regard to the ALJ's reference to S.V.'s ability to meet achievement goals in, *inter alia*, study skills, the IEP for study skills included these goals for S.V., then in first grade: "[S.V.] will attend to and follow one-step directions," and "[S.V.] will retrieve coats hats, boots, *etc.* at the end of the school day." Those goals do not pertain to S.V.'s ability to classroom and homework assignments. As her mother testified to the ALJ, S.V. is able to complete homework assignments only with her mother's assistance. R. 25. Nevertheless, the consultative examiner found no limitation in this domain, and did not provide any expla-

nation for the finding. R. 368. The ALJ's determination in this domain is not supported by

substantial evidence. Further, as with the prior domain, the Court finds that the ALJ has

failed to comply with the Commissioner's regulation requiring a good explanation for why

he gave little, if any, weight to the treating psychologist's opinion and adopted the opinion

of the consultative examiner instead. SSR 96-2p.

### D. The Domain of Interacting and Relating with Others

The Commissioner, in this domain, considers how well a child initiates and sus-

tains emotional connections with others, develops and uses the language of her com-

munity, cooperates with others, complies with rules, responds to criticism, and respects

and takes care of others' possessions. 20 C.F.R. § 416.926a(i). With regard to the age

levels involved here:

> (iii) Preschool children (age 3 to attainment of age 6). At this age, you
> should be able to socialize with children as well as adults. You should begin
> to prefer playmates your own age and start to develop friendships with
> children who are your age. You should be able to use words instead of ac-
> tions to express yourself, and also be better able to share, show affection,
> and offer to help. You should be able to relate to caregivers with increasing
> independence, choose your own friends, and play cooperatively with other
> children, one-at-a-time or in a group, without continual adult supervision.
> You should be able to initiate and participate in conversations, using in-
> creasingly complex vocabulary and grammar, and speaking clearly enough
> that both familiar and unfamiliar listeners can understand what you say
> most of the time.
>
> (iv) School-age children (age 6 to attainment of age 12). When you enter
> school, you should be able to develop more lasting friendships with children
> who are your age. You should begin to understand how to work in groups to
> create projects and solve problems. You should have an increasing ability
> to understand another's point of view and to tolerate differences. You
> should be well able to talk to people of all ages, to share ideas, tell stories,
> and to speak in a manner that both familiar and unfamiliar listeners readily
> understand.

20 C.F.R. § 416.926a(i)(2)(iii) & (iv). The ALJ discounted Plaintiff's testimony concerning

her child's abilities in this domain, evidently because "it was clear that she did not have a firm grasp of what treatment the claimant presently receives." R. 48. The ALJ further wrote:

> According to the claimant's second grade records, she progressed satis-factorily in all of her social and emotional goals, including achieving one of them. These gains including being more interactive in groups, increasing her self esteem and self-assuredness, and achieving her goal of using coping skills and self redirection (Ex. 8E, pp. 1-7). The claimant's current IEP noted that although she is very shy and below grade level socially, she is doing better in groups, and is very obedient and will comply with any teacher's request (Ex. 8E, pp. 10-20). Although the claimant's mother tes-tified that the claimant has been bullied and sometimes gets rebellious with her sister, these are common childhood problems. Her mother admitted that the claimant now has some friends. The claimant's teachers only indicated a single extreme limitation in making and keeping friends, noting less than marked limitations in sharing and no problems getting along with other children (Ex. 12F). Such opinions are internally inconsistent, and are not supported by the claimant's mother's testimony of present friends. Dr. Swanger-Gagne indicated marked social limitations, because the claimant experiences anxiety in social settings, is quiet and shy, and rarely partici-pates in school (Ex. 15F). However, such opinions are not corroborated to such an extent by the claimant's present school records.

R. 49.

Plaintiff accuses the ALJ of "cherry picking" evidence to support his conclusion, while ignoring evidence to the contrary. Pl.'s Mem. of Law 29. The teachers' evaluation noted no or mild problems with getting along with other children, but extreme problems with making and keeping friends, and conversation skills. R. 407–08. Her psychological evaluation of December 11, 2010, noted that she had one female friend, but that all the boys were her friends. R. 291. Her mother testified that she had made one female friend, a peer who is in class with her. R. 26. The ALJ noted that S.V.'s "language skills are progressing slower than other abilities," and that her mother testified "that other people have difficulties understanding her." R. 49. The ALJ relied on her "current IEP" which he interpreted to show that S.V. is generally understood, citing Exhibit 8E at 1–7. R. 49. One

of the requirements for this domain, per the Commissioner's rules, is that an school age child should "should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand." 20 C.F.R. § 416.926a(i)(2)(iv). In Exhibit 8E, the reviewer wrote in the category, "[S.V.] will identify and use vocabulary related to the end of kindergarten level content area curriculum through classification, categorization and association skills," the following comment:

> 3. Apr PG Progressing Gradually—The student is making less than anticipated progress but may still achieve the goal. Ultimamente, [S.V.] ha mostrado alguna dificultad en entender y usar el vocabulario relacionado a la unidad de ciencia (los animales) de su clase. [S.V.] tambien mostro dificultad en entender el concepto de "palabras opuestas" para asociar y nombrar palabras.

R. 271. The portion in Spanish is not translated,[4] but appears to elaborate on the goal more than the English portion. The ALJ presumably did not have a translation either (since none appears in the Record). The same issue of non-translation of the more elaborate Spanish comments is repeated throughout the exhibit. Therefore, the Court finds that without the information that may be contained in the Spanish portion, the ALJ could not rely on the exhibit to support his conclusion that S.V. did not have any limitations in this domain. On remand, the ALJ should develop the record by obtaining translations of the Spanish portions of the progress report to ascertain whether the progress comments support a finding that S.V. has no limitations in this domain.

---

[4] Using Google Translate, the Spanish portion appears to state the following: Lately, [S.V.] has shown some difficulty in understanding and using vocabulary related to the unit of science (animals) of her class. [S.V.] also showed difficulty in understanding the concept of "opposing words" to associate and name words.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 9, is granted in part, and the Commissioner's cross-motion for judgment on the pleadings, ECF No. 10, is denied. The case is remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g).

DATED:     March 2, 2017
           Rochester, New York

                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge